IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES of the PLUMBERS' LOCAL UNION NO. 93 U.A.; BOARD OF TRUSTEES of the PLUMBERS' LOCAL UNION NO. 93 U.A. RETIREMENT ACCOUNT FUND; BOARD OF TRUSTEES of the PLUMBERS' LOCAL UNION NO. 93 U.A. PENSION FUND; BOARD OF TRUSTEES of the PLUMBERS' LOCAL UNION NO. 93 U.A. HEALTH AND WELFARE FUND; BOARD OF TRUSTEES of the JOINT APPRENTICESHIP COMMITTEE FUND of the PLUMBING & HEATING INDUSTRY OF LAKE AND McHENRY COUNTIES; and the INDUSTRY ADVANCEMENT FUND, Plaintiffs, v. ENCOTECH CONSTRUCTION SERVICES, INC. and DIANE L. FRANK, Defendants. | Case No. 07 C 1901<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

This action is brought by the Board of Trustees of the Plumber's Local Union No. 93 U.A. (the "Union"), the Board of Trustees of the Plumber's Local Union No. 93 U.A. Retirement Account Fund, the Board of Trustees of the Plumber's Local Union No. 93 U.A. Pension Fund, the Board of Trustees of the Plumber's Local Union No. 93 U.A. Health and Welfare Fund, the Board of Trustees of the Joint Apprenticeship Committee Fund of the Plumbing and Heating Industry of Lake and McHenry Counties, and the Industry Advancement Fund (collectively the "Funds"). The Union and the Funds (collectively "Plaintiffs") filed suit against Defendants Encotech Construction Services,

Inc. ("Encotech") and Diane Frank ("Frank"), alleging breach of contract under § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. Pursuant to Fed. R. Civ. P. 56(b) and Local Rule 56, Plaintiffs have moved for summary judgment. For the reasons stated herein, Plaintiffs' Motion is granted.

## STATEMENT OF UNDISPUTED FACTS[1]

In 2001, Encotech and the Union entered into a Subscription Agreement whereby Encotech agreed to "be bound by the terms and conditions of the Collective Bargaining Agreement between [the Union] and the Lake & McHenry Counties Plumbing & Heating Contractors Association."[2] (Def. 56.1 Resp. ¶ 4.) Encotech was required to make monthly reports of hours worked by covered Union employees ("monthly contribution reports") and pay contributions to the Funds for each hour worked by Union employees. (Def. 56.1 Resp. ¶ 6.) Although the only Collective Bargaining Agreement ("CBA") in evidence is dated "June 1, 2005 THROUGH May 31, 2008," (*see* R. 38, Ex. 2), Encotech made contribution reports and payments to the Funds both before and after these dates. (Def. 56.1 Resp. ¶¶ 6, 19.)

---

[1] Throughout this Opinion, citations to Plaintiff's Local Rule 56.1 Statement of Material Facts have been abbreviated to "Pl. 56.1 ¶ ___." and citations to Defendants' Response to Plaintiffs' Local Rule 56.1 Statement of Material Facts have been abbreviated to "Def. 56.1 Resp. ¶ ___."

[2] Plaintiffs assert that the Subscription Agreement was entered into "on or about February 3, 1998." (Pl. 56.1 ¶ 4.) Defendants respond that the Subscription Agreement was dated May 29, 2001, but cite to no exhibit in support of this contention. Local Rule 56.1(b) requires that a party opposing summary judgment submit "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon" to establish the disputed fact. Ordinarily, "a failure to respond by the nonmovant as mandated by the local rules results in an admission." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Reviewing the exhibit cited by Plaintiffs, however, the Court finds that the Subscription Agreement was dated May 29, 2001, and can find no evidentiary support for the 1998 date. In an exhibit attached to their Reply, Plaintiffs indicate that Encotech began employing Union workers and paying into the Funds in February 1998, but do not offer evidence supporting the existence of a signed Subscription Agreement as of that date. (*See* R. 65, Ex. 1, ¶¶ 2-4.)

Encotech did not submit contribution payments from January 2005 through March 2007.[3] (Def. 56.1 Resp. ¶ 9.) Section 502(g)(2) of ERISA and the terms of the then-operative CBA provide that employers who fail to submit their monthly contribution reports and contributions to covered benefit funds on a timely basis are responsible for the payment of liquidated damages plus any reasonable attorney's fees and cost of maintaining suit. (Def. 56.1 Resp. ¶ 8.) Accordingly, Plaintiffs filed this suit for recovery of the unpaid contributions on April 6, 2007. (*See* R. 1, Compl.)

In May of 2007, Encotech and Frank, as President of Encotech and in her personal capacity, entered into a Settlement Agreement with Plaintiffs for the payment of $253,272.15 over a thirty-six month period at an interest rate of 8.25%. (Def. 56.1 Resp. ¶¶ 10, 14.) The Settlement Agreement obligated Encotech and Frank to submit monthly contribution reports and payments to the Funds for all periods subsequent to April 31, 2007, (Def. 56.1 Resp. ¶ 12), and stipulated that any payment not received on the due date would constitute a default on the Settlement Agreement. (Def. 56.1 Resp. ¶ 13.) The Settlement Agreement provided that Frank would be individually liable for all the obligations of Encotech under the terms of the Agreement, (Def. 56.1 Resp. ¶ 15), and that in the event Encotech or Frank defaulted on any of their obligations under the terms of the Agreement, all remaining payments would be accelerated and become immediately payable. (Def. 56.1 Resp. ¶ 16.) The Settlement Agreement also provided for a waiver of the final two payments if all previous payments were submitted on time. (Def. 56.1 Resp. ¶ 33.) On Plaintiffs' motion, the Court

---

[3] Defendants argue that they are not liable for the failure to submit contribution payments during this period because the Subscription Agreement terminated on May 31, 2002. (*See* Def. 56.1 Resp. ¶ 9.) They fail to cite to any evidence in the record in support of this termination date, however, "and a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith*, 321 F.3d at 683. Nor does reference to the exhibits cited by Plaintiffs provide sufficient evidence that the Subscription Agreement ended on May 31, 2002. The page of the Subscription Agreement provided to the Court is headed "Concrete Coring 6-1-01 to 5-31-02" but provides no context from which the Court could conclude that May 31, 2002 was the ending date of the entire Subscription Agreement, because the Court cannot discern whether the provided page constituted the entirety of the Subscription Agreement or only a portion thereof.

dismissed Plaintiffs' suit without prejudice and with leave to reinstate on or before June 1, 2010. (*See* R. 12).

After executing the Settlement Agreement, Encotech continued to employ members of the Union and submitted monthly contribution reports and payments for the months of April 2007 through August of 2008 and October through December 2008. (Def. 56.1 Resp. ¶ 19.) It is unclear whether Encotech submitted a contribution report for September of 2008, but undisputed that no payments were made in that month.[4] (Def. 56.1 Resp. ¶ 20.) Encotech ceased to employ members of the Union in February 2009 after failing to submit union dues from September of 2008 through February 2009 and failing to submit monthly contribution reports or payments in January and February 2009. (Def. 56.1 Resp. 20-22.) As a result of its failure to timely remit these contribution payments and Union dues, Encotech's liability for unpaid contribution amounts is $5,457.76 and its liability for unpaid Union dues is $1,868.12. (Def. 56.1 Resp. ¶¶ 28-29.) Additionally, a payroll audit conducted in April 2009 revealed that Encotech owes additional contribution deficiencies in the amount of $12,618.43. (Def. 56.1 Resp. ¶¶ 30-31.) Because Encotech's liability for these amounts was secured by the Settlement Agreement, and because the Agreement provided that Frank "shall be individually liable for all the obligations of Encotech" under it, Frank is also liable for these unpaid dues and contribution amounts. (*See* R. 52, Ex. 4.)

---

[4] Plaintiffs cite two contradictory pieces of evidence in support of their assertion that no contribution report was submitted in September 2008. (*See* Pl. 56.1 ¶ 20.) The Affidavit of Scott Spangle, the Collection Coordinator for the Funds, states that no report was submitted. (*See* R. 52, Ex. 3, ¶ 6.) Defendants' Answers to Plaintiffs' First Requests for Admission, however, states that "Encotech has not paid the following amounts as reported on" Encotech's contribution reports, and states an amount for September 2008, thereby implying that a contribution report was submitted for that month. (R. 52, Ex. 5, ¶ 12.) Defendants state that a report was submitted for September 2008, but provide no evidence in support of this assertion other than the Answers to Plaintiffs' First Requests for Admission. (*See* Def. 56.1 Resp. ¶ 20.) In any event, Defendants do not dispute that they did not make contribution payments for September 2008.

The monthly contribution reports submitted by Encotech, and signed by an Encotech representative, stated:

> [T]he employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Plumbing and Mechanical Contractors Association of Northern Illinois and the Lake County and McHenry County Journeyman Plumbers' Local Union 93 of the United Association. Further, the undersigned hereby expressly accepts and agrees to be bound by the trust agreements governing U.A. Plumbers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to it's [sic] U.A. 93 plumbers[.]

(Def. 56.1 Resp. ¶ 25.)[5]

Pursuant to the terms of the Settlement Agreement, Encotech and Frank submitted settlement payments for the months of May of 2007 through January of 2009. (Def. 56.1 Resp. ¶ 17.) However, Encotech and Frank failed to submit settlement payments for the months of February through October of 2009. (Def. 56.1 Resp. ¶ 18.) As a result of this failure, Plaintiffs moved to reinstate this action and add Frank as a Defendant on February 10, 2009; the Court granted the Motion to Reinstate on February 18, 2009. (*See* R. 14, 19.) On April 16, 2009, Plaintiffs filed an Amended Complaint against Encotech and Frank. (Def. 56.1 Resp. ¶ 1; *see* R. 38, Am. Compl.)

Under the Settlement Agreement, Encotech and Frank owe an unpaid principal amount of $97,838.96 and liquidated damages in the amount of $9,783.89. (Def. 56.1 Resp. ¶ 26-27.) Plaintiffs also assert that Encotech and Frank owe them "$17,514.95 in reasonable attorney's fees pursuant to the terms of the" CBA. (Def. 56.1 Resp. ¶ 32.)

---

[5] Defendants dispute that the contribution report language cited in Plaintiffs' Statement of Facts is not an accurate recitation of the contribution report language used on the cited exhibit, but do not cite to any exhibit in support of their contention. (*See* Def. 56.1 Resp. ¶ 25.) Upon reviewing the contribution report cited by Plaintiffs, the Court has corrected two errors in the transcription of the provision, neither of which alters its legal effect.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## DISCUSSION

Plaintiffs have moved for summary judgment on their claim that Encotech and Frank breached the terms of the Settlement Agreement. Defendants do not dispute that they are liable for outstanding contributions and union dues. Defendants have not responded to Plaintiffs' legal arguments with respect to most of the elements necessary for the Settlement Agreement to constitute

6

a valid contract between the parties, and Plaintiffs' Motion for Summary Judgment adequately demonstrates that the Agreement comprised an offer, an acceptance, and sufficiently definite and certain terms as to form a contract under Illinois law. Defendants also do not dispute as a factual matter that they have breached the terms of the Settlement Agreement by failing to submit continuing contribution reports and payments and settlement payments in accordance with the Agreement. Defendants do argue, however, that the Settlement Agreement lacked consideration and that they are not liable for liquidated damages, interest, or attorney's fees because Encotech was not bound by the terms of any valid Collective Bargaining Agreement providing for such penalties. Additionally, Frank argues that even if Encotech was bound by the CBA at the time the Settlement Agreement was executed, the Settlement Agreement lacked consideration with respect to her personally, and so she is not personally liable for Encotech's debt. Frank additionally raises the affirmative defenses of unconscionability and economic duress as defenses to her liability as the personal guarantor of Encotech's obligations under the Settlement Agreement

    **I.**    **Defendants' Argument that the Settlement Agreement is Invalid for Lack of Consideration**

First, Defendants waived their right to plead lack of consideration as a contractual defense to the Settlement Agreement by failing to plead it in their Answer (or at any point prior to responding to Plaintiffs' Motion for Summary Judgment). *See Ill. Conf. of Teamsters & Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1365 (7th Cir. 1995). The Federal Rules of Civil Procedure require that all affirmative defenses be specifically plead. Rule 8(c) states that "in responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including. . . duress. . . [and] lack of consideration." However, failure to plead affirmative defenses

in an answer only results in waiver of the defense if the plaintiff would be harmed as a result of the delay. *See Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005). Generally, such harm can be assumed when the affirmative defense is raised only after the close of discovery, such that the plaintiff is unable to adequately respond to its factual basis. *See, e.g., Laborers' Pension Fund v. Dynamic Wrecking & Excavation, Inc.*, No. 07 C 2156, 2008 WL 4874110, at *7 (N.D. Ill. June 13, 2008) (Norgle, J.) (plaintiff harmed when defendant raised affirmative defense of moral duress only in response to plaintiff's motion to summary judgment); *BMO Capital Mkts. Corp. v. McKinley Med. LLC*, No. 06 C 6071, 2007 WL 2757172, at *10 (N.D.Ill. Sept. 18, 2007) (Der-Yeghiayan, J.) (plaintiff harmed when defendant raised affirmative defense of waiver after discovery closed).

To allow Defendants to raise this contractual defense now, after discovery has closed, would deprive Plaintiffs of the opportunity to conduct discovery as to consideration issue. It would be prejudicial to Plaintiffs if Defendants were permitted to raise contractual defenses only at the late stage of responding to a motion for summary judgment. Even if the consideration defense had not been waived, however, it fails on its merits.

Defendants argue that the Settlement Agreement is not supported by adequate consideration because it is a guaranty contract for the payment of existing debt not executed contemporaneously with the underlying debt instrument. Under Illinois law, "[a] guaranty which is executed contemporaneously with the debt it guarantees is supported by sufficient consideration. . . . However, where the guaranty is executed *after* the guaranteed debt is incurred, new consideration is necessary to support the guaranty." *QST Industries, Inc. v. Feinberg*, 01 C 1023, 2003 WL 260674 at *7 (N.D.Ill. Feb. 7, 2003) (Lefkow, J.) (quoting *City Nat'l Bank of Hoopeston v. Russell*, 615 N.E.2d 1308, 1311 (Ill. App. 4th Dist. 1993)). However, a guaranty executed contemporaneously with an

agreement to restructure underlying debt has sufficient consideration where, as here, the guarantor benefits from the debt restructuring. *See Laborers' Pension Fund*, 2008 WL 4874110 at *8. Because Encotech benefitted from the terms of the Settlement Agreement both in avoiding immediate liability for its overdue contribution payments and union dues, and in the form of a promise to waive the final two payments due if the prior settlement payments were timely submitted, the Settlement Agreement was supported by sufficient consideration. Because the terms of the Settlement Agreement, which were favorable to Encotech, were offered by Plaintiffs in exchange for Frank's personal guaranty of the Agreement, her guaranty was also supported by sufficient consideration. *See id.* Thus, both Encotech's assent to the Settlement Agreement and Frank's personal guaranty for the Settlement Agreement were supported by adequate consideration, and Defendants' late-presented defense of lack of consideration fails as a matter of law.

**II. Encotech's Liability under the Terms of the CBA**

Encotech argues that it was never bound by the CBA because the subscription agreement between Encotech and the Union terminated on May 31, 2002,[6] while the CBA in evidence ran from June 1, 2005 through May 31, 2008. As a result, Encotech asserts that it cannot be held liable for interest, liquidated damages, or attorney's fees pursuant to the terms of the CBA, because it was never bound to those terms.

Plaintiffs contend that Encotech manifested its intent to be bound by the CBA through its actions and through three kinds of written agreements. The Subscription Agreement, signed by an Encotech representative, stated that "the undersigned employer agrees to abide by the terms and

---

[6] As noted above, Encotech has provided no evidence from which the Court can properly determine that this was, in fact, the termination date of the Subscription Agreement.

conditions of the Collective Bargaining Agreement." Though the CBA provided by Plaintiffs to the Court did not take effect until June 1, 2005, every monthly contribution report submitted by Encotech both before and after that date stated that "the employer hereby agrees to be bound by the terms of the *current* collective bargaining agreement . . . ." (emphasis added). Finally, when Encotech became delinquent in its contributions to the Funds, it signed a Settlement Agreement binding it to the terms of the 2005-2008 CBA, including committing to pay liquidated damages arising from its delinquent contributions according to the terms of the CBA.

Encotech maintains that despite these documents, it is not bound by any CBA or liable for penalties arising thereunder because there was no signed CBA between the Union and Encotech. Encotech correctly points out that "no employer may contribute to a union pension plan without a 'written agreement' under § 302(c)(5)(B) of the Labor-Management Relations Act, 29 U.S.C. § 186(c)(5)(B)." *Moriarty v. Larry G. Lewis Funeral Dirs., Ltd.*, 150 F.3d 773, 775 (7th Cir. 1998). However, this requirement has been read literally: "As long as the agreement is written, it does not have to be a 'signed unexpired collective bargaining agreement between the parties' . . . or even a signed agreement at all." *Line Constr. Ben. Fund v. Allied Elec. Contractors, Inc.*, 591 F.3d 576, 581 (7th Cir. 2010) (internal citations omitted); *see also Bricklayers Local 21 of Ill. Apprenticeship & Training Prog. v. Banner Restoration*, 385 F.3d 761, 771-72 (7th Cir. 2004) ("[T]he existence of a 'written agreement,' albeit an unsigned one, detailing the terms upon which the fringe benefit contributions were to be made, and [the employer's] payment of contributions in accordance with that agreement, effectively concludes our inquiry."). The CBA is a written document that specifies a detailed basis for the payment of contributions to the Funds. This is all that § 302(c)(5)(B) requires.

Although it did not sign the 2005-2008 CBA, Encotech manifested assent to the CBA by its course of conduct. An obligation under a CBA "'is not dependent upon the reduction to writing of the parties' intention to be bound, . . . rather all that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement.'" *Bricklayers*, 385 F.3d at 766 (quoting *Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370, 373 (7th Cir. 1985)). In ascertaining whether an employer's course of conduct binds it to a CBA, "the payment of union wages, the remission of union dues, . . . and the existence of other agreements evidencing assent and the submission of the employer to union jurisdiction" may all be considered.[7] *Id.*

Encotech behaved in a matter consistent with implied adoption of the CBA. First, the monthly contribution reports submitted by Encotech, which were signed by an authorized representative of Encotech, stated that "[t]he employer hereby agrees to be bound by the terms of the current collective bargaining agreement . . . ." Encotech reasons that since signed certification language is entitled to only "some" weight, there remains an issue of material fact as to whether it adopted the CBA. *See Operating Eng'rs Local 139 Health Ben. Fund v. Gustafson*, 258 F.3d 645, 650 (7th Cir. 2004). However, the fact that the certification language does not by itself definitively show assent does not mean all other evidence should be ignored.

For example, by signing the Settlement Agreement, Encotech and Frank acknowledged that Encotech was bound by the CBA. The Settlement Agreement states that "Encotech is signatory to a Collective Bargaining Agreement with the Plumbers Local Union No. 93 U.A." (R. 52, Ex. 1.)

---

[7]In *Line Construction Benefit Fund v. Allied Electrical Contractors*, the court noted that if the employer "was collecting union dues during this time period, that is strong evidence that it was party to the CBA. Without a CBA, such collections are illegal." 591 F.3d 576, 580 (7th Cir. 2010). Though the Plaintiffs alleged in an affidavit attached to their Summary Judgment Reply that Encotech collected union dues pursuant to the CBA, they did not properly include this fact in their Local Rule 56.1 Statement for the Court's consideration.

This is followed by the statement: "Whereas, pursuant to the terms of the Collective Bargaining Agreement to which Encotech is bound, it incurred liability for contribution/working dues . . . ." (*Id.*) The terms of the Settlement Agreement also bound Encotech to ongoing contribution reports and payments and to the payment of liquidated damages. (*See id.*) Encotech submitted settlement payments for the months of May of 2007 through January of 2009, which went towards outstanding contributions, liquidated damages, and interest charges accrued. During this post-settlement period, Encotech continued to employ members of the Union, submitted monthly contribution reports to the Trust Funds, and reported the number of hours worked by covered employees further demonstrating its assent to the terms of the CBA.

When considered in light of the signed Subscription Agreement, the signed Settlement Agreement, Encotech's decision to continue to employ Union members, the submission of monthly contribution reports, and the reporting of number of hours worked by covered employees, no reasonable jury could find that Encotech had not manifested its assent to the CBA. *Cf. Shales v. Lanas Const., Inc.*, No. 07 C 2970, 2009 WL 562607 (N.D.Ill. March 4, 2009) (Kennelly, J.) (defendant employer manifested accepted to CBA by deducting union dues, submitting contribution reports, and signing certification statements).

Even when viewed in the light most favorable to Encotech, Encotech's course of conduct reflects that it intended to be bound by the CBA. It acted in conformity with the CBA and the Settlement Agreement, and signed documents binding it to the terms of the CBA on at least three separate occasions. Therefore, no reasonable fact finder could find that Encotech had not manifested assent to the CBA. Since Encotech manifested its assent to the CBA, it was bound by its terms as well as the terms of the Settlement Agreement, and therefore is fully liable for its breach of the

Settlement Agreement and for damages, including liquidated damages, attorney's fees, and interest, in accordance with the terms of the CBA.

### III. Frank's Liability as Guarantor of the Settlement Agreement

In addition to the lack of consideration argument discussed above, Frank raises two individual affirmative defenses to her personal liability as guarantor of the Settlement Agreement: 1) that "[i]t is unconscionable for Frank to become individually liable for Encotech's debt," and 2) that "economic duress affected Frank in her execution . . . of the settlement agreement."

#### A. Economic Duress

Frank has failed to raise a disputed issue of material fact supporting her economic duress claim. Economic duress can constitute a defense to contract formation "where one is induced by a wrongful act or threat of another to make a contract under circumstances that deprive one of the exercise of one's own free will." *Hurd v. Wildman, Harrold, Allen & Dixon*, 707 N.E.2d 609, 614 (Ill. App. 1st Dist. 1999). That somebody enters into a contract due to the pressure of financial circumstances or a difficult bargaining position is insufficient. *See Selmer Co. v. Blakeslee-Midwest Co.*, 704 F.2d 924, 928 (7th Cir. 1983) ("The mere stress of business conditions will not constitute duress where the defendant was not responsible for the conditions"). Instead, "the party claiming economic duress must show that it was induced to enter into a contract by some wrongful act of the other contracting party." *Laborers' Pension Fund*, 2008 WL 4874110 at *6. Where a party has voluntarily entered into a settlement agreement and accepted the benefits of that agreement, duress cannot serve as a defense to the agreement's validity. *See Castellano v. Wal-Mart Stores, Inc.*, 373 F.3d 817, 820 (7th Cir. 2004) (citing *Joyce v. Year Investments, Inc.*, 196 N.E.2d 24, 26-27 (Ill. App. 1964)).

13

Frank has not cited to any facts that suggest the Plaintiffs induced her to enter into the contract by a wrongful act. There is a vague reference to Encotech's dire financial circumstances, but this in and of itself does not constitute duress. *See Selmer Co.*, 704 F.2d at 928. Frank argues that this case is similar to *Laborers' Pension Fund*, where a plaintiff sought to collect against an individual on a personal guaranty executed subsequent to an existing liability due plaintiffs from the defendant employer. In that case, the defendants' motion for summary judgment was denied because the court determined that a reasonable jury could find duress where the plaintiffs sent two men to the defendant to collect the owed money and made repeated phone calls in an attempt to induce the defendant to sign the document. *Laborers' Pension Fund*, 2008 WL 4874110 at *7.

Nothing of the sort has been alleged here. Frank only claims that she was induced to sign the contract because of the threat of litigation against Encotech. This claim is insufficient to support a finding of economic duress. Furthermore, Encotech and Frank accepted the benefits of the agreement—the ability to pay off monies owed to the Plaintiffs over a three year period. Such action "ends the inquiry" into whether the settlement agreement was invalid as a result of economic duress. *Castellano*, 373 F.3d at 820. No reasonable jury could find that economic duress affected Frank in her execution of the agreement.

### C. Unconscionability

Frank has similarly failed to raise a disputed issue of material fact with regard to the unconscionability defense. Frank claimed that it is "unconscionable for [her] to become individually liable for Encotech's debt . . . ." However, "[t]he mere fact that one party to a contract enjoyed little relative bargaining strength . . . cannot alone render a contractual provision unenforceable. An unconscionable bargain is one which no reasonable person would make and which no honest person

would accept." *Larned v. First Chi. Corp.*, 636 N.E.2d 1004, 1006 (Ill. App. 1st Dist. 1994) (citations omitted). A contract is unconscionable if one of the parties had no meaningful choice but to assent to the terms, or if the terms are "unreasonably favorable" to one of the parties. *Hartford Fire Ins. Co. v. Architectural Mgmt, Inc.*, 550 N.E.2d 1110, 1114 (Ill. App. 1st Dist. 1990). A contract may be unconscionable if there is a "gross disparity in the values exchanged" or if there was a "gross inequality in the bargaining positions of the parties together with terms unreasonably favorable to the stronger party." *Ahern v. Knecht*, 563 N.E.2d 787, 792 (Ill. App. 2nd Dist. 1990).

Despite the disparity in bargaining power between Frank and the Plaintiffs here, the contract cannot be characterized as unconscionable. Frank argues that the terms are unconscionable because she received no *personal* benefit from the contract. If accepted, such reasoning would result in the invalidation of all guaranty contracts, because guarantors rarely, if ever, receive personal benefits from the contract. *See, e.g., Chi. Exhibitors Corp. v. Jeepers! of Ill., Inc.*, 876 N.E.2d 129, 140 (Ill. App. 1st Dist. 2007) (declining to hold terms of a guaranty contract unconscionable). As such, if the Settlement Agreement itself is not unconscionable, then neither is Frank's guaranty. Frank agreed to guaranty the Settlement Agreement in exchange for a significant restructuring of Encotech's debt to the Plaintiffs. No reasonable jury could find a gross disparity in the values exchanged, nor are the terms unreasonably favorable to either party. The terms of the guaranty were therefore not unconscionable.

### IV. Plaintiffs' Attorneys' Fees

Plaintiffs are entitled to an award of reasonable attorneys' fees under the terms of the Settlement Agreement and the CBA to which Encotech manifested its assent. However, "[t]he party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the

15

hourly rate claimed." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). A reasonable "market rate" for an attorney is the "rate that lawyers of similar ability and experience in the community normally charge their paying clients for the work in question." *Id.* at 555 (internal citation omitted).

Here, Plaintiffs' counsel has provided a detailed itemization of the work performed by various attorneys and other individuals throughout the life of this litigation. (*See* R. 52, Ex. 8.) However, Plaintiffs have provided no evidence that the rates listed in this itemization are reasonable or comparable to those charged by others of similar ability and experience. *See, e.g.*, *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000) (proposed hourly rates acceptable where the attorneys supported their rates with their own affidavits confirming their reasonableness and affidavits from other attorneys practicing in that market); *Markon v. Bd. of Educ. of the City of Chicago*, 525 F. Supp. 2d 980, 982 (N.D. Ill. 2007) (finding plaintiff's burden of showing reasonableness satisfied when plaintiff submitted not only counsel's affidavit and billing records but also affidavits by two other lawyers attesting to the reasonableness of the hourly billing rates). Additionally, the Settlement Agreement reflects that attorney's fees in the amount of $2,866.31 were included in the settlement amount (*see* R. 52, Ex. 4); as those fees were not itemized, the Court cannot now determine whether Plaintiffs' current fee total is exclusive or inclusive of those already-accounted-for fees. Therefore, Plaintiffs are ordered to provide the Court with additional evidence demonstrating that the specific rates charged for each of its attorneys and the other individuals listed on its counsel's affidavit were comparable to the rates of similar practitioners in the area, and to clarify its itemization of fees so as to ensure that no specific billing amounts are included both within the amount agreed to in the parties' earlier settlement and in the amount now requested.

**CONCLUSION AND ORDER**

Because Defendants have presented no disputed issue of material fact according to which a reasonable jury could find either that the Settlement Agreement did not constitute a valid contract supported by adequate consideration or that Defendants are not in breach of the Agreement, Plaintiffs' Motion for Summary Judgment [50] is granted. Pursuant to the terms of the Settlement Agreement, Encotech and Frank as guarantor are liable for the unpaid settlement principal amount of $97,838.96, the settlement-agreed liquidated damages amount of $9,783.89, and the post-settlement delinquent contribution and union dues payments in the total amount of $19,944.3. Plaintiffs are to provide additional information regarding their requested attorneys' fees within 14 days from the date of this Order.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: May 14, 2010